**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Mariah Yolanda Rizzo,<br><br>    Defendant. | No. CR 17-1724-TUC-CKJ (JR)<br><br>**ORDER** |

On February 4, 2019, Magistrate Judge Jacqueline M. Rateau issued a Report and Recommendation ("R&R") (Doc. 129) in which she recommended the Motion to Suppress (Doc. 82) filed by Mariah Yolanda Rizzo ("Rizzo") be denied. Rizzo has filed an Objection to the Report and Recommendation (Doc. 132); the government has filed a Response (Doc. 136).

*Standard of Review*

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)

("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

In her factual summary, Rizzo includes argument as to inferences and conclusions regarding the evidence presented at the evidentiary hearing. For example, Rizzo points out that Border Patrol Agent Christopher Troxell ("Troxell") testified that "the vehicle swerved lanes into the turn lane to turn onto SR 82, though he conceded that he never mentioned it in his initial report." Objection. (Doc. 132, p. 2) (citing R&R, p. 4; TR1:23-24, 25, 47-49). Rizzo asserts Border Patrol Agent Kathleen June ("June") "contradicted Troxell on that point, testifying that she did not recall any sudden movement from the Navigator." *Id.* (citing R&R, p. 4; TR1:77, 93). While not recalling any sudden movement does not necessarily mean it did not occur and that June contradicted Troxell, the Court accepts such arguments as simply arguments, not specific objections to the R&R.

Rizzo asserts the magistrate judge made a factual determination regarding Rizzo's crossing history without any supporting evidence in the record. Specifically, Rizzo points out the government did not demonstrate that Rizzo was the driver of each of the prior crossing occasions involving the Lincoln Navigator that Rizzo was driving when she was stopped on October 12, 2017. However, Rizzo does acknowledge that the magistrate judge "noted at the September 27, 2018, suppression hearing that it was the vehicle with recorded crossings, and not necessarily Ms. Rizzo." *Id.* at 7 (citing TR1:33, 8-14). Rizzo states, "Thus, for the Magistrate Court now to find Ms. Rizzo's driving behavior suspicious due to her strong crossing pattern is contradictory from its previous findings." *Id.* The Court overrules this objection in part. While the specific evidence does not conclusively demonstrate Rizzo was driving during each of the crossings, the vehicle was registered in her name and a reasonable inference may be made that Rizzo was driving the vehicle during some or all of the border crossings.

*Reasonable Suspicion – Initial Stop*

Rizzo argues the border patrol agents lacked reasonable suspicion to make the initial stop of Rizzo. Because Rizzo has argued there is no evidence Rizzo was driving the vehicle during the prior border crossings, Rizzo argues the legal u-turn made by Rizzo alone cannot provide the basis for reasonable suspicion. However, the evidence does establish that the vehicle driven by Rizzo on the date of the incident had made multiple crossings in the prior two months. A reasonable inference may be made that Rizzo may have been driving this vehicle during those prior crossings. *See e.g. United States v. Raygoza-Garcia*, 902 F.3d 994, 999–1001 (9th Cir. 2018) (totality of circumstances approach allows agents to draw on experiences and specialized training to make inferences). The Court finds this circumstance is appropriately considered in determining whether reasonable suspicion existed to stop Rizzo.

The legal u-turn was not the only basis for a finding of reasonable suspicion. Furthermore, as pointed out by the magistrate judge, this fact may considered when combined with other factors in determining reasonable suspicion. *United States v. Montero-Camargo*, 208 F.3d 1122, 1137 (9th Cir. 2000). The Court agrees with the summary of the magistrate judge:

> The agents testified that there are eleven turn-around points between the SR 90/SR 82 intersection and the SR 90 checkpoint. Yet, Rizzo used the final U-turn point before the checkpoint which suggested to the agents that she might be carrying contraband or scouting for others to see if the checkpoint was operational and fully staffed. She might have dispelled at least some of the agents' suspicions had she returned to a nearby house or if she had proceeded to the gas station, but she did not. Rather, after making the U-turn, Rizzo travelled back to the intersection and did not continue toward the larger population centers around Sierra Vista, but turned left on SR 82 toward Tombstone and bypassed the gas station. Thus, after making the U-turn, none of Rizzo's actions suggested an innocent reason for making the last-second U-turn before the checkpoint.

R&R, pp. 13-14. Further, the agents knew the vehicle was registered to a residence in Oro Valley, yet knew the u-turn with a left turn on SR 82 meant the vehicle was driving away from Oro Valley.

Additionally, the agents reasonably surmised, given the multiple recent sightings of the vehicle in the area, it was unlikely the driver was lost. Indeed, the analysis includes

consideration of "the modes or patterns of operation of certain kinds of law-breakers." R&R, p. 11, 13 (citing *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087-88 (9th Cir. 2007) (As to stops by border patrol agents, the totality of circumstances may include the area characteristics, the proximity to the border, usual traffic patterns and the time of day, previous alien or drug smuggling in the area, the behavior of the driver, including obvious attempts to evade officers, the appearance or behavior of passengers, the model and appearance of the vehicle, and the experience of the officer). This includes the scouting of the checkpoint by smugglers to determine whether the checkpoint is open, the checkpoint is heavily staffed, or canines are present at the checkpoint. The Court agrees with the magistrate judge reasonable suspicion existed for the initial stop of Rizzo.

*Reasonable Suspicion – Second Stop*

Rizzo argues the second stop relies solely on the fruits of the first stop. "Therefore, if the District Court agrees that Border Patrol did not meet the legal standard to conduct the first stop on Ms. Rizzo, then the Court cannot find that Border Patrol articulated suspicious behaviors to warrant a second stop on Ms. Rizzo." Objection (Doc. 132, p. 8). However, the Court has found the initial stop of Rizzo was supported by reasonable suspicion.

In addition to the information that supported the initial stop, other information supported the second stop. First, the initial stop had increased the suspicions. *See* R&R (Doc. 129, p. 14). For example, Rizzo's stories had changed when Agent Troxell was speaking with her. Additionally, although one of Rizzo's statements indicated she was taking photos or videos in the area, photographic equipment was not observed in the vehicle. Further, the vehicle appeared to avoid an open checkpoint between the two stops and, while the vehicle did not have any passengers during the first stop, two passengers were later observed in the vehicle. In other words, the agents were able to articulate additional information to support the second stop. Rizzo's reliance, therefore, on *United States v. Peters*, 10 F.3d 1517 (10th Cir. 1993) (where the results of an initial stop dispelled

1 reasonable suspicion, second stop without any new information was not supported by reasonable suspicion), is misplaced.

The Court agrees with the magistrate judge that reasonable suspicion existed to stop Rizzo for the second time. Furthermore, even if the first stop was not supported by reasonable suspicion and the information supporting the initial stop was excised, sufficient additional information independently supports a finding that reasonable suspicion existed to stop Rizzo a second time. That this additional information involves conduct that may be innocent by itself, when taken together, the additional conduct warrants further investigation. *United States v. Arvizu*, 534 U.S. 266, 272 (2002); *Raygoza-Garcia*, 902 F.3d at 999–1001 (quoting *Valdes-Vega*, 738 F.3d at 1078) ("'under the totality of the circumstances, and even though individual acts may be "innocent in [themselves] . . . taken together, they [] warrant[ed] further investigation'").

Accordingly, after an independent review, IT IS ORDERED:

1. The February 4, 2019, Report and Recommendation (Doc. 129) is ADOPTED.
2. The Motion to Suppress Evidence (Doc. 82) is DENIED.

DATED this 3rd day of April, 2019.

_____
Cindy K. Jorgenson
United States District Judge